**Modified and Affirmed and Opinion Filed December 6, 2023**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

Nos. 05-22-00967-CR, 05-22-00968-CR, 05-22-00969-CR, 05-22-00970-CR,
05-22-00971-CR, 05-22-00972-CR, 05-22-00973-CR, 05-22-00974-CR,
05-22-00975-CR, 05-22-00976-CR, 05-22-00977-CR, 05-22-00978-CR,
05-22-00979-CR, 05-22-00980-CR, 05-22-00981-CR, 05-22-00982-CR,
05-22-00983-CR, 05-22-00984-CR, 05-22-00985-CR, 05-22-00986-CR

**CHRISTOPHER CHAIREZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 366-81666-2022, 366-81667-2022,**
**366-81668-2022, 366-81669-2022, 366-81670-2022, 366-81671-2022,**
**366-81672-2022, 366-81673-2022, 366-81674-2022, 366-81675-2022,**
**366-81676-2022, 366-81677-2022, 366-81678-2022, 366-81679-2022,**
**366-81680-2022, 366-81681-2022, 366-81682-2022, 366-81683-2022,**
**366-81684-2022, 366-81685-2022**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Breedlove

In a single consolidated trial, a jury found appellant Christopher Chairez guilty of the allegations in twenty indictments. Eight of the indictments alleged possession of child pornography and twelve alleged possession with intent to promote child pornography. After the jury assessed sentences in each case ranging from ten years' probation to eight years' imprisonment, the trial court ruled that six

of the sentences would run consecutively, and the remaining sentences would run concurrently.[1] The trial court then rendered judgments in the twenty cases. In six issues, appellant challenges the judgments. He contends he was denied a speedy trial and argues that the trial court erred by overruling his objections to the admission of evidence and by denying his motions to quash the indictments. We affirm the trial court's judgment in each appeal.

## BACKGROUND

In July 2019, Investigator Lee McMillian of the Collin County Sheriff's Office began investigating online sharing of child pornography. This led him to acquire child pornography images from appellant's computer by means of a peer-to-peer program. On December 17 and 18, 2019, McMillian downloaded and personally viewed a number of child pornography images and videos from an IP address that was associated with appellant. His investigation led to acquiring a search warrant for appellant's residence and electronic devices.

---

[1] In our review of the record, we note that the judgment in Cause No. 366-81685-2022 (this Court's No. 05-22-00986-CR) provides that "This sentence shall run: Concurrently," in conflict with the trial court's oral ruling on the record at the conclusion of the punishment phase that the sentence was "to be served consecutively." When there is a conflict between the oral pronouncement of a sentence and the written judgment, the oral pronouncement controls. *Shuler v. State*, 650 S.W.3d 683, 686 (Tex. App.—Dallas 2022, no pet.) (citing *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004)). The remedy is to reform the judgment. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). This Court has the power to modify a judgment to speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). Accordingly, we reform the judgment in Cause No. 366-81685-2022 to reflect that the sentence is to run consecutively.

On January 9, 2020, officers executed the search warrant. While still at appellant's residence, McMillian performed triage forensics on the electronic devices to determine if he had probable cause to make an arrest. He looked at the content of what had been seized and found images of child pornography. Appellant was arrested and charged with possession of child pornography and possession of child pornography with the intent to promote.

On the same date, a Collin County magistrate set bonds on each charge, set bond conditions, and entered an emergency protective order. Appellant was released upon posting the bonds. Appellant filed five motions to amend his bond conditions, resulting in the bond conditions being amended five times in 2020. The amendments included permitting appellant's use of a computer for work, permitting travel to counties contiguous to Collin County, allowing contact with his son by electronic means, vacating the emergency protective order, and later allowing supervised contact with his son for two hours a week. The bond conditions remained in effect until Appellant's conviction on these charges. There were no allegations that Appellant violated his bond conditions.

The grand jury issued 20 indictments on May 3, 2022. Twelve of the indictments alleged Appellant possessed child pornography with the intent to promote it, on or about December 17, 2019.[2] Eight of the indictments alleged

---

[2] TEX. PENAL CODE ANN. § 43.26(g).

possession of child pornography on or about January 9, 2020.[3] All of the indictments are the result of evidence acquired in McMillian's investigation under the search warrant that was executed on January 9, 2020. The indictments generally allege that appellant possessed, or possessed with intent to promote, visual material that depicted a child under 18 years of age engaging in sexual conduct. They do not identify the specific visual material on which each indictment is based.

Appellant filed a motion to dismiss the indictments for violation of his speedy trial rights in all twenty cases. The trial court heard the motions and denied them on July 8, 2022. The cases were consolidated and proceeded to a jury trial on August 22, 2022.

McMillian was the only witness called by the State at trial. He testified about his investigation and his discovery of more than 15,000 images of child pornography on appellant's electronic devices. The jury found appellant guilty on each indictment, and the trial proceeded to the punishment phase.

McMillian again testified about the number, description, and categories of images seized, and the images were admitted into evidence for all purposes. Appellant called several witnesses, including officer Lawrence Denison of the Collin County Sheriff's office who testified about the Collin County GPS monitoring program and appellant's compliance with the program since his arrest. Haley

---

[3] TEX. PENAL CODE ANN. § 43.26(d).

Barnhart, an investigator with the Department of Family and Protective Services, testified that she interviewed appellant's son when appellant was arrested. She explained that appellant's son gave no indication that he had been abused or exposed to pornography. Appellant's aunt Angelina Chairez testified that appellant was sexually abused as an infant. Michelle Stewart, a Collin County adult probation officer, testified about conditions of community supervision for persons on probation for child pornography offenses. Kris White, appellant's therapist, testified that appellant had been receiving therapy since February 2020 for sexual issues and for anxiety and depression relating to the charges against him. White testified that appellant was a dedicated father but that the charges had a negative effect on appellant's son and their relationship. White also opined that appellant was dedicated to his therapy, wore his GPS monitor, and was a good candidate for probation.

After hearing all of the evidence, the jury assessed sentences ranging from three to eight years on eighteen of the cases, and ordered probation on the remaining two. The trial court ordered that twelve of the sentences (ranging from three to six years each) and the two probation sentences would run concurrently. The trial court ordered that the remaining six sentences ranging from three to eight years (for a total of 33 years) would run consecutively. This appeal followed.

In six issues, appellant contends the trial court erred by (1) overruling his motions to dismiss the indictments due to violations of his federal and state speedy trial rights, (2) denying his motion to quash and dismiss the indictments because they

did not give him adequate notice of the charges against him, (3) denying his motion to quash and dismiss the indictments "because they were not fully the product of the grand jury," (4) denying his motion to quash the indictments because "the allegations in the indictments resulted in violations of appellant's double jeopardy rights," (5) admitting evidence of extraneous offenses, wrongs, and acts, and (6) admitting unreliable and irrelevant opinion testimony by an unqualified witness.

**1. Speedy Trial (Issue 1)**

The Sixth Amendment to the U.S. Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. *See* U.S. CONST. amend. VI. The right to a speedy trial attaches once a person is either arrested or charged. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). Courts determine a speedy trial claim on an ad hoc basis by analyzing and weighing four factors: (1) the length of the delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay. *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972); *Cantu*, 253 S.W.3d at 280.

The State bears the burden to justify the length of the delay, while the defendant bears the burden to prove he asserted his right and has been prejudiced. *Cantu*, 253 S.W.3d at 280. The defendant's burden on the latter two factors "varies inversely" with the State's degree of culpability for the delay. *Id.* When conducting the balancing test, no single factor is determinative, and the conduct of both the

prosecutor and the defendant must be weighed. *Barker,* 407 U.S. at 530, 533; *State v. Munoz,* 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

To trigger a speedy trial analysis, the defendant must make an initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Gonzales v. State,* 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (quoting *Doggett v. United States,* 505 U.S. 647, 651–52 (1992)). If the defendant makes a threshold showing of presumptive prejudice, the court must consider and weigh each of the remaining *Barker* factors. *Id.* (citing *Munoz,* 991 S.W.2d at 821–22).

If the right to a speedy trial has been violated, the remedy is dismissal of the charging instrument with prejudice. *Cantu,* 253 S.W.3d at 281. Because this is an extreme remedy, "courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

We apply a bifurcated standard of review in a speedy trial analysis: we employ an abuse of discretion standard for the factual components and a de novo standard for the legal components. *State v. Lopez*, 631 S.W.3d 107, 113–14 (Tex. Crim. App. 2021). Thus, we give almost total deference to the trial court's historical findings of fact that are supported by the record. *Gonzales*, 435 S.W.3d at 808–09. The

–7–

balancing test of the *Barker* factors is a purely legal question that we review de novo. *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016).

### *The Length of the Delay*

At the hearing, the trial court found that appellant had "already won on the issue of the delay" and that a full *Barker* analysis should be undertaken. The State does not contest that the length of time from appellant's arrest to his motion to dismiss—two years and four months—was sufficient to trigger a full *Barker* analysis. Accordingly, the State bears the burden to justify the delay, while appellant bears the burden to show his diligent assertion of the speedy trial right and to show prejudice. *Cantu*, 253 S.W.3d at 280. And because the State concedes that the delay was presumptively prejudicial, the first factor weighs in favor of appellant. *See Jackson v. State*, No. 05-14-00283-CR, 2015 WL 1540800, at *2 (Tex. App.—Dallas April 1, 2015, no pet.) (mem. op. not designated for publication).

### *Reason for the delay*

With respect to the second *Barker* factor, the State bears the initial burden of justifying the delay. *Cantu*, 253 S.W.3d at 280. We do not attribute equal weight to all reasons for delay: an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts or negligence, is weighed less heavily against the State; and a valid reason is not weighed against the State at all. *Munoz*, 991 S.W.2d at 822. The State divides the time between appellant's arrest and the filing of his speedy trial motion into distinct periods.

**1/9/20 to 8/17/20.** Appellant was arrested on January 9, 2020. McMillian testified that once he acquired appellant's twelve devices, the first step was to image them, a process that took about ten days. The first delay occurred in the subsequent process of "ingesting" the image drives into a software platform called Magnet Axiom. McMillian testified that he began this process on January 15, 2020, but realized in August 2020 that the forensics "failed in the process." He testified that he could work on the ingesting process only in his office, and for some period of time he did not have access to his office due to the COVID pandemic. He did not specify the dates during which he lacked access, however. He explained:

> Q. Okay. Throughout this case being started up until the time it was officially filed with my office, is it fair to say that you lost some time due to COVID and not being able to be in your forensic laboratory?
>
> A. I lost months due to not being able to be at the lab. I can't—we were sent home and we could work remotely. Child pornography is not something that you can work on remotely, so I lost months due to that.

Although appellant argued that the extraction process could have been done faster, offering testimony from Daniel Allen FitzGerald, an IT consultant, McMillian testified that he was not aware of any method that would have extracted the images in any shorter period of time. FitzGerald offered his own opinion that the process should have taken "less than 30 days" if McMillian had processed and released information from one server at a time. FitzGerald admitted, however, that he had not had experience with investigations by police agencies and he was not familiar with the procedures or the resources at the Collin County Sheriff's Office. He responded

–9–

to a question from the trial court that he did not have any published works or procedures "indicat[ing] that this is the method that all forensic . . . investigators should use," but rather was testifying to his "own personal opinion."

Appellant's counsel also questioned McMillian why he could not have analyzed some subset of the information and submitted that to the District Attorney's office instead of completing the entire process first. Nothing in the *Barker v. Wingo* analysis necessitates this piecemeal approach, however, and McMillian explained that it was "not a forensically sound method." He explained that as part of an investigation he looks for "all types of evidence, including exculpatory evidence," and could not do so in a piecemeal process.

We conclude the State offered evidence of valid reasons to justify this period of time. "A valid reason for the delay should not be weighed against the government at all." *Munoz*, 992 S.W.2d at 822.

**8/17/20-4/28/21.** McMillian restarted the process in August 2020, and completed the forensics on April 28, 2021. He testified that he then had "a set that [was] forensically sound that I could present." Again, although FitzGerald testified that the process could have been completed more quickly, there was no evidence that the State was required to use his method or could have done so given its procedures, its resources, and other constraints. The fact that the process had to be restarted was unfortunate but there is no evidence of any deliberate attempt to delay by the State. Instead, the State argues that the time period was reasonable given the "sheer volume

of data" to be processed. "[W]e must presume the trial court resolved any disputed fact issues in the State's favor, and we defer to the implied findings that the record supports." *Jackson*, 2015 WL 1540800, at *3.

We conclude that the State's reasons for this delay were "more neutral," and accordingly weigh against the State "less heavily" if at all. *See Munoz*, 992 S.W.2d at 822 (A "more neutral reason such as negligence or overcrowded courts should be weigh[t]ed [against the government] less heavily.") (quoting *Barker*, 407 U.S. at 531).

**4/28/21-5/12/21.** McMillian testified that the next step in the process was to "tag" or quantify the amount of potential evidence in the extractions. He explained, however, that "there was some fear that . . . due to the age of the suspect's own son, we thought there might be images of his son on there, so we had to go through every single image." He testified that this process took "a very significant amount of time," although he conceded that no images of appellant's child were found. McMillian testified that "the final collections, timewise, all of that would have been on 5-12-21." We conclude that this delay was reasonable and should not weigh against the State. *See Munoz*, 992 S.W.2d at 822.

**5/13/21-9/13/21.** There is no evidence about this period, and accordingly nothing in the record to show that there was any deliberate attempt by the State to delay the trial. "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense

–11–

nor a valid reason for the delay." *Balderas*, 517 S.W.3d at 768 (internal quotation omitted).

**9/13/21-12/17/21.** McMillian testified that the case "was in a stack of other cases that were . . . headed over to the DA's office to be filed," but for a reason unknown to McMillian, the District Attorney's office did not receive it. McMillian testified that he discovered the case had not been filed when he conducted an audit of his own on in December 2021. There is no evidence of intentional delay, however. "A more neutral reason such as negligence or overcrowded courts should be weighed against the government less heavily." *Munoz*, 991 S.W.2d at 822 (internal quotation omitted). This delay weighs slightly against the State.

**12/17/21-1/4/22.** Although McMillian discovered on December 17, 2021 that the District Attorney's office had not received the case, he went on vacation for two weeks before refiling it. The State concedes that McMillian was negligent by not refiling immediately, but argues that negligence weighs only slightly against the State. As we have explained, negligence weighs less heavily against the State than deliberate delay. *Id.* This delay weighs slightly against the State.

**1/4/22-5/3/22.** The case was filed with the District Attorney's office, prepared, and presented to the grand jury. *See Shaw v. State*, 117 S.W.3d 883, 889–90 (Tex. Crim. App. 2003) (the State is "entitled to a reasonable period in which to prepare its case"). The grand jury issued 20 indictments on May 3, 2022. There is no evidence that this period of time was unreasonable or the result of any deliberate

attempt by the State to delay. Accordingly, this period is neutral. *See Munoz*, 992 S.W.2d at 822.

**Conclusion.** There is no evidence that the State deliberately delayed appellant's trial for strategic gain. Instead, the delay weighs slightly against the State in only two or three of the seven time periods we have discussed. Although the time period between appellant's arrest and his indictment was lengthy, most of it was spent in preparing the large quantity of data, first for the District Attorney and then for the grand jury. Problems with the first attempt to prepare and analyze the data from appellant's devices were exacerbated by the pandemic when McMillian had no access to his office. Accordingly, although the delay was long, we conclude under these unusual circumstances that the second *Barker* factor weighs slightly against the State. *See Jackson*, 2015 WL 1540800, at *3.

*Appellant's assertion of his right*

The third *Barker* factor examines the defendant's assertion of his right to a speedy trial. Appellant's assertion of his right should receive "strong evidentiary weight" in our determination of whether he has been deprived of that right. *See Balderas*, 517 S.W.3d at 771. Although appellant's motion referenced his right to a speedy trial, he sought dismissal of the charges against him, not a speedy trial. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. If a defendant does not timely demand a speedy trial, we must assume

that he did not really want one. *Balderas*, 517 S.W.3d at 771. And the longer the delay before trial, the more likely it would be that a defendant wanting a speedy trial would request it. *Id.*

Appellant did not raise the issue of a speedy trial until two years and four months after his arrest. He filed his first speedy trial motion within three weeks of the date indictments were issued, and an amended motion two months later that was heard shortly after its filing. In both motions, however, appellant sought dismissal of the charges, not a speedy trial.

The trial court noted that "the defendant has to make some showing of asserting" his speedy trial right before indictment by taking steps such as calling the District Attorney's office to inquire about the status of the case or hiring an attorney to make inquiries. Although appellant successfully challenged some of the conditions of his parole bond in five motions that he filed between January 16, 2020 and December 18, 2020, these motions did not include a request for a speedy trial. Appellant argues, however, that he asserted his speedy trial rights "promptly after he was indicted."

But "invocation of the speedy trial provision . . . need not await indictment, information, or other formal charge." *Cantu*, 253 S.W.3d at 283–84 (quoting *Dillingham v. United States*, 423 U.S. 64, 65 (1975) (per curiam)). In *Jackson*, we explained,

–14–

> An accused who has been arrested but not charged has a choice: (1) wait until he is charged, file a motion requesting a speedy trial, and, if the trial court does not grant this motion, then file a motion to dismiss "because he has diligently sought what he is entitled to—a speedy trial," or (2) wait until he is charged and file a motion to dismiss "if he can show that he diligently tried to move the case into court before formal charges were filed." *Cantu,* 253 S.W.3d at 284.

*Jackson*, 2015 WL 1540800, at *3. Appellant filed his initial "Motion to Dismiss for Violation of Speedy Trial Rights" on May 27, 2022, less than a month after his indictments but more than two years after his arrest. As in *Jackson*, "[t]he record does not show any efforts by [appellant] to move the case into court during the time between [his] arrest and [his] motion." *Id.* at *4. Appellant's "failure to diligently and vigorously seek a rapid resolution is entitled to strong evidentiary weight." *Id.* (internal quotations omitted). "These facts suggest [appellant] did not really want a speedy trial; [he] only wanted a dismissal." *Id.* Appellant's delay in attempting to move his case into court weighs against him. *Id.*

### *Prejudice to appellant*

The fourth and final *Barker* factor we consider is the prejudice caused to the defendant as a result of the State's delay. The defendant has the burden of showing prejudice. *Cantu*, 253 S.W.3d at 280. We assess this factor in light of the three interests the right to a speedy trial is intended to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017).

Appellant was able to post a bond and so was not incarcerated between his arrest and his indictments, with the exception of about ten days when bonds were being obtained. There were restrictions on travel and on where he could reside, however, and he wore a GPS monitor for over two years at his own expense. His access to his son was limited and supervised, and he could not visit his son's school or go to "any place that children congregate or are educated," as he explained at the hearing. He was prohibited from using computers, although this limitation was amended almost immediately so that he could use them for work.

Appellant began seeing a therapist for the "dual purposes" of "address[ing] the child pornography usage" and his "depression and the anxiety." He also obtained a diet plan from his doctor to address his "weight problem that was caused by overeating due to anxiety." He testified that the depression and anxiety have "gotten better" but still affect him. Appellant testified that he lost the job he held at the time of his initial arrest, but found "another job in IT" and was still employed there at the time of the hearing on his motion to dismiss.

There was no evidence that appellant's defense was in any way impaired by the delay. Appellant does not contend that any evidence or witness was lost, and the State's only witness at trial was still employed by the State and had personally conducted the investigation that led to appellant's indictment. At the hearing on appellant's speedy trial motion, the court found that the delay "has not unduly prejudiced the defendant, and that this defendant has not made a prima facie case as

it relates to the prejudice against him." The court continued, "I don't believe that the evidence that was shown does rise to that level. The fact that he was charged would have resulted in the same incidents or issues that he has as it relates to his relationship with his child, and those issues." The court also noted that appellant had not sought removal of his leg monitor, and had sought and obtained amendment of his bond conditions relating to contact with his child. The trial court also noted that "I don't find there was any other testimony or any other credible testimony of these prejudicial factors, other than him saying that he has anxiety and trouble sleeping."

In sum, appellant had no "oppressive pretrial incarceration" and no impairment of his defense, *see Hopper*, 520 S.W.3d at 924, but he had significant restrictions on his access to his son. As the trial court noted, however, "[t]he fact that he was charged would have resulted in the same incidents or issues that he has as it relates to his relationship with his child, and those issues," and the restrictions were lessened in several amendments to his bond conditions. Appellant's anxiety and concern arose both from his child pornography usage and from the conditions required by his bond, and the court noted that there were no pending requests by appellant to remove his leg monitor "or to lessen any of those factors that are currently pending in this case." The court noted it "would certainly entertain any of those motions" if presented, and further noted that prior motions "were granted in some respects as to his ability to see his child and be involved in his child's life as it relates to this particular charge and this offense." But the court concluded, "I don't

find there was any other testimony or any other credible testimony of these prejudicial factors, other than him saying that he has anxiety and trouble sleeping. There was no other evidence presented of that." Moreover, "evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286. We conclude, as the trial court did, that this factor weighs against appellant. *See Conatser v. State*, 645 S.W.3d 925, 931 (Tex. App.—Dallas 2022, no pet.) (where appellant testified to "considerable stress and anxiety" from delay, but did not offer evidence of significant prejudice, fourth *Barker* factor weighed "heavily against him").

*Balancing the Factors*

Noting the months of unexplained delay, we have concluded that the length and reasons for the delay weigh against the State. Appellant's failure to assert his right to a speedy trial, however, weighs against him and in favor of the State. And finally, the prejudice appellant identified was the result of the nature of the charges rather than the length of the delay. We conclude that appellant has failed to carry his burden to establish both that he adequately asserted his right and that the State's delay caused him prejudice. We conclude that the *Barker* factors weigh against finding a speedy trial violation. *See id.* at 932. We overrule appellant's first issue.

## 2. Indictments (Issues 2, 3, and 4)

Appellant's complaints in his second, third, and fourth issues arise from his contention that the 20 indictments do not "identify a particular item of visual material so as to distinguish it from other items of visual material." For example, he contends that for indictments 668, 669, and 684,[4] without a specific photograph identified,

> [o]ne cannot determine whether the indictments allege three different offenses or the same offense two times, or some combination thereof, or whether the visual material includes only sexual intercourse, sexual contact and the lewd exhibition of genitals, or includes that conduct and other conduct. The term "sexual contact" is defined by § 43.01(4), but can mean many, many different things, so use of that term does not give Appellant adequate notice of what visual material he is alleged to have possessed.

Appellant contends that because each indictment did not identify a specific visual image, the indictments did not give him adequate notice of the charges against him (Issue 2), were "not fully the product of the grand jury" (Issue 3) and "resulted in violations of appellant's double jeopardy rights" (Issue 4).

"The right to notice is set forth in both the United States and Texas Constitutions." *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (citing U.S. CONST. amend. VI; TEX. CONST. art. I, § 10). "Thus, the charging instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense." *Id.*; *see also* TEX. CODE CRIM. PROC. ANN. arts. 21.02–.04, and 21.11 (setting out statutory requirements for indictments).

---

[4] Appellant identifies the indictments by the last three digits in the trial court case number.

The sufficiency of an indictment is a question of law that we review de novo. *Hughitt v. State*, 583 S.W.3d 623, 626 (Tex. Crim. App. 2019). "Generally, an indictment that tracks the language of the applicable statute will satisfy constitutional and statutory requirements." *Id.* We "engage in a two-step analysis when analyzing whether a charging instrument provides adequate notice." *State v. Zuniga*, 512 S.W.3d 902, 907 (Tex. Crim. App. 2017). First, we identify the elements of the offense. *Id.* Next, we consider whether the statutory language is sufficiently descriptive of the charged offense. *Id.*

The twenty indictments all allege violations of Texas Penal Code § 43.26, "Possession or Promotion of Child Pornography." Section 43.26(a) provides:

> (a) A person commits an offense if:
>
> > (1) the person knowingly or intentionally possesses, or knowingly or intentionally accesses with intent to view, visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct, including a child who engages in sexual conduct as a victim of an offense under Section 20A.02(a)(5), (6), (7), or (8); and
> >
> > (2) the person knows that the material depicts the child as described by Subdivision (1).

TEX. PENAL CODE ANN. § 43.26(a). Eight of the indictments allege a violation of subsection (d) of § 43.26, providing that an offense under subsection (a) is a felony of the third degree. TEX. PENAL CODE ANN. § 43.26(d).

Twelve of the indictments allege a violation of subsection (g) of § 43.26, providing that an offense under subsection (e) is a felony of the second degree. Section 43.26(e) provides:

(e) A person commits an offense if:

(1) the person knowingly or intentionally promotes or possesses with intent to promote material described by Subsection (a)(1); and

(2) the person knows that the material depicts the child as described by Subsection (a)(1).

TEX. PENAL CODE ANN. § 43.26(e).

Accordingly, all twenty indictments allege that appellant "intentionally and knowingly possess[ed]" "visual material" that "visually depicted," and which "the defendant knew visually depicted," a child who was younger than 18 years of age at the time the image was made "engaging in sexual conduct." The terms "sexual conduct," and "visual material" are specifically defined in penal code § 43.25(a)(2) and § 43.26(b). The twelve indictments under subsection (g) added "with intent to promote" to this allegation. "Promote" is specifically defined in penal code § 43.25(a)(5), "to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise or to offer or agree to do any of the above."

The indictments differed, however, on the visual depictions alleged, including:

- "actual sexual contact and actual lewd exhibition of the genitals";

- "actual sadomasochistic abuse, and actual deviate sexual intercourse, and actual sexual contact, and actual lewd exhibition of the genitals";

- "actual sexual intercourse and actual sexual contact and actual lewd exhibition of the genitals";

- "actual sadomasochistic abuse and actual lewd exhibition of the genitals";

- "actual deviate sexual intercourse";

- "actual deviate sexual intercourse and actual sexual contact";

- "actual deviate sexual intercourse and actual sadomasochistic abuse";

- "actual lewd exhibition of the genitals"; and

- "actual deviate sexual intercourse and actual sexual contact and actual lewd exhibition of the genitals."

The State argues that each indictment was sufficient without identifying specific photographs, relying on *Taylor v. State*, No. 03-19-00077-CR, 2021 WL 476657, at \*4–5 (Tex. App.—Austin Feb. 10, 2021, pet. ref'd) (mem. op., not designated for publication). In that case, the appellant complained "about the State's failure to identify in the indictment which specific images of child pornography that it sought to prove at trial," an issue he had also raised in the trial court by a motion to quash the indictment. *Id.* at \*4. The court rejected this argument, noting that the indictment "tracked the statutory language for the offense of possession of child pornography and identified the specific 'sexual conduct' for each count that the child was alleged to have been engaging at the time of the image." *Id.* at \*5. The court also explained that the State "need not allege facts that are merely evidentiary in nature" in the indictment. *Id.* (internal quotation omitted).

–22–

Appellant distinguishes *Taylor* on the ground that he, unlike Taylor, requested that the State "elect the specific image on which it was relying as proof for each count." *See id.* (observing that "when the State rested, appellant did not request that the State elect the specific image on which it was relying as proof for each count"). Appellant filed pretrial motions to quash or dismiss the indictments, or in the alternative to require an election. At a pretrial hearing, the trial court denied appellant's request to make an election at the close of the case.

But at the same pretrial hearing, the trial court ordered the State to identify which specific image related to each indictment and to identify which specific image the State was likely to use for each indictment. The State did so. We conclude that the indictments provided sufficient notice of the offenses charged. *See Hughitt*, 583 S.W.3d at 626; *Zuniga*, 512 S.W.3d at 907.

We also reject appellant's argument that the indictments "were not fully the product of the grand jury." As this Court recently explained, "[a] defendant has a constitutional right to have a grand jury pass upon the question of whether there is probable cause to believe he committed a particular offense. The purpose of the grand jury is to protect citizens from the State's commencement of arbitrary or unreasonable felony prosecutions. The grand jury does not, however, necessarily need to pass on matters that are purely evidentiary." *Uribe v. State*, No. 05-18-00001-CR, 2019 WL 1292468, at *2 (Tex. App.—Dallas Mar. 20, 2019, pet. ref'd) (citations omitted) (mem. op. not designated for publication). The fact that

–23–

the grand jury did not identify specific visual material supporting its decision did not affect the defendant's substantial rights or render the indictments constitutionally inadequate. *See id.* (no constitutional violation where the indictment was amended to allege a different family violence conviction to raise the charged offense to the level of a felony).

Finally, we reject appellant's argument that the trial court erred by denying his motion to quash the indictments because "the allegations in the indictments resulted in violations of appellant's double jeopardy rights." Each item of child pornography found in appellant's possession constitutes a separate offense for which he may be prosecuted. *Witt v. State*, 237 S.W.3d 394, 397 (Tex. App.—Waco 2007, pet. ref'd) (citing *Vineyard v. State*, 958 S.W.2d 834, 838 (Tex. Crim. App. 1998)). The State introduced evidence showing twenty separate images or videos depicting children engaging in the sexual conduct alleged. We conclude there was no violation of appellant's double jeopardy rights. *See Vineyard*, 958 S.W.2d at 838 (possession of each item of child pornography is an "allowable unit of prosecution" for purposes of double jeopardy analysis).

For these reasons, we conclude that the indictments gave appellant adequate notice of the charges against him and did not violate his double jeopardy rights. We overrule appellant's second, third, and fourth issues.

### 3. Admission of evidence (Issues 5 and 6)

*Admission of extraneous offenses*

In his fifth issue, appellant contends the trial court abused its discretion by overruling his objections to evidence that he possessed more than 15,000 items of child pornography. McMillian testified that he found the files for which appellant was charged among a larger collection of files, and the twenty files were a representative subset of what he found. He also testified that he stopped keeping track of quantity "at just over 15,000" images in the course of explaining how long it took to perform the forensic extractions of the material. During McMillian's testimony, the State also offered Exhibit 27, a USB drive described by McMillian as "the portable case of the downloads" and Exhibit 28, an external hard drive McMillian described as "the portable case of the forensics," all obtained "from the extractions of [appellant's] actual devices." These exhibits were offered and admitted "for record purposes only" during the first phase of the trial and for all purposes during the punishment phase.

We review a trial court's ruling admitting extraneous offense evidence for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). The trial court does not abuse its discretion unless its decision lies outside the zone of reasonable disagreement. *Id.*

Appellant contends the evidence was inadmissible under rules of evidence 403 and 404. Rule 403 provides that the trial court may exclude relevant evidence if

its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. We evaluate the following four factors when conducting a rule 403 analysis: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1990) (op. on reh'g). In doing so, we balance the inherent probative force of the evidence with the proponent's need for the evidence against any tendency of the evidence to suggest a decision on an improper basis, to confuse or distract the jury from the main issues of the case, or to be given undue weight, and against the likelihood that the presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). This balancing test "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

Rule of evidence 404(b) provides that extraneous-offense evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but may be admissible for other purposes "such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(1), (2).

We first review the trial court's rulings under rule 403. Rule 403 "envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (internal quotation omitted). We consider the four factors of the rule 403 analysis in turn. *See Mechler*, 153 S.W.3d at 440.

*Probative value.* We conclude that the probative value of the evidence was high. In twelve of the twenty cases, the State bore the burden of proving that appellant possessed visual material with intent to promote it. *See* TEX. PENAL CODE ANN. § 43.26(e). In all twenty cases, the State bore the burden of proving that appellant knew the visual material he possessed depicted a child engaging in sexual conduct. *Id.* § 43.26(a). Accordingly, the trial court reasonably could have concluded that the voluminous number of images and videos made it more likely that appellant knew he possessed material depicting children and intended to promote it. *See, e.g., Leita v. State*, No. 13-14-00567-CR, 2016 WL 6541843, at *8 (Tex. App.—Corpus Christi-Edinburg Aug. 25, 2016, pet. ref'd) (mem. op., not designated for publication) (explaining that evidence of defendant's possession of large amount of child pornography "made more probable [defendant]'s knowledge that the files on his computer were being shared, which is a fact of consequence"). Thus, the extraneous evidence was probative and could help establish appellant's guilt.

*Potential to impress the jury irrationally and indelibly.* The evidence's potential to impress the jury in an irrational and indelible way was minimized during the first stage of the trial; the evidence of the additional images was admitted for record purposes only. Although the evidence was offered for all purposes during the punishment phase, it was not published to the jury. The jury was also given limiting instructions[5] during both phases of the trial about whether and how it could consider evidence of extraneous offenses, and we presume the jury followed these instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). This factor weighs in favor of the trial court's ruling.

*Time to develop the evidence.* There was only a short amount of time expended in developing the evidence. As noted, McMillian testified that he stopped counting the material at 15,000 items, in part for the purpose of explaining the amount of time taken to extract the material. The State mentioned the number of items in its opening and closing statements. During the punishment phase, McMillian identified the exhibits and stated that each of the images and files he saw on appellant's computer depict child sexual abuse. The trial court reasonably could have determined that the

---

[5] In the first phase of the trial, the jury was instructed that "if there is any testimony before you in this case regarding the Defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the intent, motive, absence of mistake, and lack of accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose." Similarly, in the second phase of the trial, the jury was instructed to disregard any "extraneous conduct, acts or offenses, if any" that the State did not prove beyond a reasonable doubt.

short time needed to develop the evidence weighed in favor of admission. *See, e.g., Nasipak v. State,* No. 03-21-00464-CR, 2022 WL 17070579, at \*5 (Tex. App.—Austin Nov. 18, 2022, no pet.) (mem. op. not designated for publication) (where during a three-day trial, the State published only one image and two videos that did not form the basis for the indictment, and related testimony was short, factor of time needed to develop the evidence "heavily weighed in favor of admission").

*Proponent's need for the evidence.* The State's need for the evidence was high. The evidence regarding the State's discovery and receipt of files from appellant's computer was complicated and technical. As we have discussed, the evidence was probative both of appellant's intent to promote and his knowledge that the material actually depicted children. Accordingly, the trial court reasonably could have determined that the State's need for the evidence weighed in favor of admission. *See Leita*, 2016 WL 6541843, at \*8 (State's need for the evidence was strong where there was no direct evidence of the defendant promoting child pornography).

*Rule 403 conclusion.* After review of the relevant factors, we conclude the trial court did not abuse its discretion by overruling appellant's objections to admission of the evidence under rule 403. *See id.* at \*8–9; *see also Nasipak*, 2022 WL 17070579, at \*6 (concluding trial court did not abuse its discretion in overruling rule 403 objection and admitting other images and videos where factors weighed in favor of admission).

*Rule 404*. Under rule 404, character evidence may be admissible for purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" even though it is inadmissible to prove that "the person acted in accordance with the character or trait." TEX. R. EVID. 404(a)(1), (b)(2). As we have noted, in all twenty cases, the State bore the burden of proving appellant's knowledge that the visual material he possessed depicted a child engaging in sexual conduct. TEX. PENAL CODE ANN. § 43.26(a). Evidence about the volume of material was probative of this fact. We conclude the trial court did not err by overruling appellant's rule 404 objections.

*Admission of testimony*

In his sixth issue appellant argues that the trial court abused its discretion by allowing McMillian to testify regarding the severity of the child pornography that he witnessed on appellant's electronic devices. McMillian testified that there are "nationally recognized categories of severity" of child pornography, created "in an effort to help us categorize child pornography across states" with differing laws about "what's illegal." He explained that "all child pornography is gauged one to nine," and "in Texas, everything five to nine is illegal."

Whether to admit scientific evidence is a decision within the discretion of the trial court, and absent an abuse of discretion, the reviewing court will not overturn that decision. *Brown v. State*, 163 S.W.3d 818, 823 (Tex. App.—Dallas 2005, pet.

ref'd). If the trial court's decision is within the "zone of reasonable disagreement," there is no abuse of discretion and the decision will be upheld. *Id.*

McMillian testified that when he connected with appellant's computer in the months before appellant's arrest, he "saw that the child pornography that was being looked for was sevens, eights, and nines, which is the most egregious" and "historically means that the suspect has been downloading child pornography for quite some time." Appellant initially objected to the testimony's relevance. *See* TEX. R. EVID. 402. He later objected under rules of evidence 702 and 705. *See* TEX. R. EVID. 702 (testimony by expert witness); TEX. R. EVID. 705 (disclosing underlying facts or data and examining expert about them). Appellant concedes that he "did not make an objection beyond relevance to the initial mention of categories of child pornography." But he argues that he did "make timely objections to testimony regarding the meaning and use of the categories."

In a hearing outside the jury's presence, the trial court heard appellant's objection to McMillian's testimony under rules of evidence 702 and 705 after counsel questioned McMillian on the subject:

> [DEFENSE COUNSEL]: The objection is—is that there's not—he doesn't have sufficient knowledge and there isn't a sufficient determination that this is scientifically valid and is—and so his—he's given an expert opinion that he's not qualified to give and it doesn't have sufficient basis.

The trial court overruled the objection, explaining that "Rule 702 states differently." Texas Rule of Evidence 702 provides that "[a] witness who is qualified

–31–

as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. In a criminal case, an adverse party must be permitted to examine the expert about the facts and data underlying an opinion before the expert may state the opinion before the jury. *Id.* 705(b). "An expert's opinion is inadmissible if the underlying facts or data do not provide a sufficient basis for the opinion." *Id*. 705(c).

We first consider whether McMillian was qualified to testify about the categories. He testified that he has a Ph. D. in management and information technologies, a master's degree in the same subject, and a master's degree in business administration. He is also a licensed EMT. He worked in "pretty much every aspect" of information technology for 30 years before becoming a certified peace officer and investigator in the Internet Crimes Against Children[6] (ICAC) unit of the Collin County Sheriff's Office. He testified that he also has had training specific to his work:

> Q. Are there certain certifications of licenses that you hold that allow you to do your job?
>
> A. Yes, there's many that we have to do on the tech side. Pretty much every aspect of what we do, there's some type of training for it. So when

---

[6] McMillian explained that ICAC is "a specialized group of police investigators," and because the work is "highly technical" and "takes a lot of hours," "it's a very, very small group" of approximately 60 officers in Texas. ICAC is also a national organization "run by the federal government and pushed down to regions" in the states.

we're doing online solicitation, there's a specific class that we take for undercover chats and undercover work dealing with child prostitution. There's cases that we deal with peer-to-peer networking, file sharing. There's actually three of those based on the technology that's being used.

We do ICAC investigational techniques. We're doing certifications in the actual forensic software we use. So Magnet AXIOM is the main one that I use, or Cellebrite depending on if it's a computer or a cell phone.

We also get certifications in the industry. So as an overall umbrella certification, I'm a certified computer forensics expert, meaning regardless of the software, I can do forensics on the computer by hand.

He explained that he has investigated "close to a thousand" cases of internet crimes against children, involving some 250,000 to 300,000 files of child pornography. Accordingly, we conclude that McMillian was qualified to testify about the techniques he used in his investigation in this case, and the trial court did not err by overruling appellant's objection that McMillian gave "an expert opinion that he's not qualified to give."

We next consider appellant's objection that McMillian's use of the categories in his investigation was not "scientifically valid." Although McMillian conceded that there was no "scientific determination" showing "that this rating of images is accepted in the scientific community," he explained that it was part of his training through ICAC, and the subject of one of his certification classes. He explained that the categories are used by state and federal law enforcement as a method of focusing an investigation on images that are illegal. McMillian explained that "the further the number goes towards nine, the more extreme the child pornography is," and "[t]he

extreme torture of children, the killing of children, blood, the rape of children would be a nine." He testified that in his training and experience, he had verified the categories on multiple occasions.

McMillian testified that the categories are recognized nationally and that he has viewed more than 300,000 of these files. He explained that the categories help him to determine if a particular image is illegal in Texas. We conclude the trial court did not abuse its discretion by admitting the testimony. TEX. R. EVID. 702. We overrule appellant's sixth issue.

## CONCLUSION

We reform the judgment in trial court cause number 366-81685-2022 (this Court's No. 05-22-00986) to reflect that the sentence is to run consecutively.

In all other respects, the trial court's twenty judgments are affirmed.

220967f.u05
220968f.u05
220969f.u05
220970f.u05
220971f.u05
220972f.u05
220973f.u05
220974f.u05
220975f.u05
220976f.u05
220977f.u05
220978f.u05
220979f.u05
220980f.u05
220981f.u05
220982f.u05
220983f.u05
220984f.u05
220985f.u05
220986f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Maricela Breedlove/
_____
MARICELA BREEDLOVE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00967-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas
Trial Court Cause No. 366-81666-2022.
Opinion delivered by Justice Breedlove. Justices Partida-Kipness and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00968-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81667-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00969-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81668-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00970-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81669-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00971-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81670-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

      Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00972-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81671-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00973-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81672-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00974-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81673-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

      Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 6th day of December, 2023.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00975-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81674-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00976-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas Trial Court Cause No. 366-81675-2022.
Opinion delivered by Justice Breedlove. Justices Partida-Kipness and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00977-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81676-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00978-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81677-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 6th day of December, 2023.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00979-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas Trial Court Cause No. 366-81678-2022.
Opinion delivered by Justice Breedlove. Justices Partida-Kipness and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00980-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas Trial Court Cause No. 366-81679-2022.
Opinion delivered by Justice Breedlove. Justices Partida-Kipness and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00981-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas Trial Court Cause No. 366-81680-2022.
Opinion delivered by Justice Breedlove. Justices Partida-Kipness and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00982-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81681-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00983-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81682-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00984-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas Trial Court Cause No. 366-81683-2022.
Opinion delivered by Justice Breedlove. Justices Partida-Kipness and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00985-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81684-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER CHAIREZ,
Appellant

No. 05-22-00986-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-81685-
2022.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that "This sentence shall run: CONSECUTIVELY," in accordance with the trial court's oral pronouncement.

In all other respects, the trial court's judgment is **AFFIRMED**.

Judgment entered this 6th day of December, 2023.